BILLY PATRICK                                                                    PLAINTIFF

V.

CARRIE POWELL,
RICKY PARNELL, AND
ROXANNE HOFFSTUTTER                                                              DEFENDANTS

## MEMORANDUM OPINION

Defendants have filed a motion for summary judgment (DN 51).  Plaintiff has filed a

response (DN 61).  Defendants have filed a reply (DN 64).  This matter is ripe for adjudication,

and the motion for summary judgment is GRANTED.

## BACKGROUND[1]

Plaintiff was an inmate at Fulton County Detention Center starting in October of 2007.

Sometime in January, Plaintiff began to experience various symptoms, including bloody stool,

diarrhea 6-8 times a day, stomach cramps, and loss of appetite.  Plaintiff submitted one or two

medical requests forms which were allegedly lost or ignored, and of which there is no record at

the prison.

On January 20, 2008, Plaintiff submitted an additional medical request form.  A jail

employee received the form and performed a protocol on Plaintiff.[2]  Dr. Cox was contacted via

---

[1]Because this is a motion for summary judgment, the facts are portrayed in the light most
favorable to the Plaintiff.

[2]Fulton County Detention Center has a contract with an outside company to provide
medical services.  As part of the contract, a nurse and doctor physically visit the prison as
required by Kentucky law.  In addition, the nurse and doctor are always on-call for the prison
and available to answer questions or issue prescriptions via phone.  To help the prison staff
evaluate sick prisoners when there are no medical staff members present, the contracted

telephone.  Plaintiff was instructed to rest and increase fluid intake. Plaintiff was prescribed

Pebto-Bismol tablets and was instructed to see the nurse during the next sick call.  Plaintiff saw

the nurse on the morning of January 21, 2009.  The nurse examined his abdomen and noted some

tenderness.  The nurse ordered that a hemocult stool sample be taken to help evaluate the blood

and prescribed additional medication per Doctor Cox's orders.  Around the same time, Plaintiff

also began refusing his Pebto-Bismol tablets, claiming that they were not helping his stomach.

On January 24, 2008 Plaintiff submitted another medical request form stating that his

mouth would not stay hydrated and that drinking water led to stomach cramps.  He also stated

that he was in very serious pain.  Defendant Roxanne Hoffstutter performed a protocol.  Dr. Cox

was contacted.  Plaintiff was instructed to drink plenty of fluids and was prescribed an anti-

nausea medication in an attempt to control his vomiting.

On January 25, 2008, the results of Plaintiff's hemocult test returned positive for blood.

Dr. Cox ordered a colonoscopy be performed.  Because Plaintiff was a state prisoner, Fulton

County Detention Center had to verify with the Kentucky Department of Corrections where the

colonoscopy should be performed.  The Department of Corrections gave the Fulton County

Detention Center permission to perform the colonoscopy locally, and the procedure was

scheduled to occur about two weeks later.

At some point, Defendant Carrie Powell allegedly stopped by Plaintiff's cell.  Defendant

---

healthcare company has provided the Fulton County Detention Center with a book of Protocols.
To use the book, the deputy jailer on duty must first ascertain the present symptoms of the ill
inmate.  Then, the deputy jailer goes to the portion of the protocol book that covers those
symptoms.  In some instances the book provides follow-up questions to be asked, instructs the
jailer to place the inmate on sick call the next time medical staff is present, instructs the jailer to
immediately contact the nurse or doctor by phone, or instructs the jailer to obtain immediate
emergency treatment for the inmate, among other courses of action.

Powell stated that she thought Plaintiff was malingering and that he should therefore not be receiving any medication.

On January 31, 2008, before he had received his scheduled colonoscopy, Plaintiff passed out while taking a shower. Plaintiff originally was able to mumble responses to guards, but then stopped responding. Plaintiff's eyes rolled back, and Plaintiff was cold to the touch, pale, and had a very slow pulse. Plaintiff had blood coming from his rectum. An ambulance was called, and Plaintiff was taken to Parkway Regional Hospital. After Plaintiff was stabilized, Plaintiff was transferred to Murray Calloway County Hospital to see a doctor more experienced with the issues Plaintiff was experiencing. Plaintiff was released from the hospital on February 15, 2008. Plaintiff was diagnosed with ulcerative colitis, a genetic or idiopathic condition not the result of the delayed treatment.

Defendant Roxanne Hoffstutter was a jailer with a GED and one-year medical assistant certificate. Defendant Carrie Powell was a deputy jailer with no formal medical training beyond basic CPR. Defendant Ricky Parnell is the elected official in charge of Fulton County Detention Center.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Plaintiff has alleged a § 1983 constitutional violation as a result of his cruel and unusual punishment due to Defendants' deliberate indifference to his serious medical need. Plaintiff concedes that no action by Defendants could have prevented his ulcerative colitis. However, Plaintiff contends that his suffering could have been alleviated sooner and the episode where he lost consciousness in the shower could have been avoided with proper treatment.

### Deliberate Indifference

The Supreme Court mandates "a two-step sequence for resolving government officials' qualified immunity claims." *Pearson v. Callahan*, 123 S.Ct. 808, 815 (2009).

> "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right . . . [s]econd, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct."

*Id.* at 815-16. While a court was originally mandated to evaluate the steps in numerical order, the Supreme Court recently stated that "the judges of district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of qualified immunity analysis should be addressed first[.]" *Id.* at 818. In the instant case, Plaintiff has alleged constitutional violations as a result of deliberate indifference to medical needs.

As its jurisprudence has evolved, the Supreme Court has stated that the Eighth Amendment encompasses "the evolving standards of decency that mark the progress of a maturing society" and "the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (internal quotations omitted). "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.* Failure to provide medical care could produce pain and suffering, physical torture or a lingering death "inconsistent with contemporary standards of decency[.]" *Id.* Accordingly, the "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id.* at 104. "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.

However, an "inadvertent failure to provide adequate medical care" or a "negligent [diagnoses or treatment]" does not state a valid claim of medical mistreatment under the Eighth Amendment. *Id.* at 104-05. Similarly, a dispute over the adequacy of treatment also does not generally result in a constitutional violation. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir.

1976). Rather, an inmate must be "exposed to undo suffering or the threat of tangible residual injury." *Id.*

The difference between negligence and deliberate indifference is discussed in *LeMarbe v. Wisneski*, 266 F.3d 429 (6th Cir. 2001). A plaintiff must show that an official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 436 (citing *Farmer v. Brennan*, 511 US 825, 837 (1994)). "An official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A plaintiff can also establish deliberate indifference "by a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment [or] . . . when the need for treatment is obvious [and] medical care . . . is so cursory as to amount to no treatment at all." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843-44 (6th Cir. 2002) (citing 11th and 4th Cir. precedent).

**Roxanne Hoffstutter**

Applying the above analysis, Roxanne Hoffstutter was not deliberately indifferent. Every time she received a medical complaint from Plaintiff, she followed proper procedure by performing a protocol, following up with Dr. Cox, and arranging for Plaintiff to see the nurse at the next available instance. While Roxanne Hoffstutter makes clear in her deposition that, in retrospect, she does not think the treatment of Plaintiff was sufficient, there is no evidence that she had any such concerns at the time. Accordingly, despite the fact that she was objectively aware of symptoms that might be considered severe, because Plaintiff had been seen and was under the control of medical professionals, Roxanne Hoffstutter fails to met the subjective requirement that she be aware, at the time of treatment, that such treatment was inadequate to

address Plaintiff's medical needs. Accordingly, Roxanne Hoffstutter was not deliberately indifferent.

Alternatively, the Sixth Circuit has not considered whether following a doctor's orders shields another medical professional from liability.[3] In two well reasoned opinions, the Fifth and Seventh Circuits considered the issue and arrived at opposite conclusions. *Compare Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010) (Nurse not shielded from liability when, for six weeks after inmate's appointment with a doctor, nurse continued to rely on diagnosis despite continuation of symptoms. Even if nurse was consulting with doctor over that period without inmate having an official appointment, nurse was still not shielded.) *with Thayer v. Adams*, 364 Fed. Appx. 883 (5th Cir. 2010) (nurses with no authority to "prescribe drugs or embark on a different course of treatment" did not create a grievance of constitutional magnitude by ignoring certain medical requests.). However, in this case, there seems to be no allegation that the treatment itself was inadequate. Plaintiff's expert stated that the hemocult sample and colonoscopy were the proper treatments for a patient with Plaintiff's symptoms. While Plaintiff's expert disagreed with the prescription of drugs prior to a diagnosis, this difference in medical opinion does not result in deliberate indifference. Plaintiff's expert's primary concern seems to be the *speed* with which the diagnosis was progressing. The fact that the diagnosis was proceeding slowly, due in no part to Roxanne Hoffstutter, more closely aligns with the *Peterman* case and allows Roxanne Hoffstutter to be shielded from liability by Doctor Cox's involvement.

Because no party was deliberately indifferent, the failure to protect claim must also fail.

---

[3]For the purposes of this analysis, this Court assumes, though it is not convinced, that a 1-year medical associates degree makes one a medical professional in the legal sense.

**Ricky Parnell**

Applying the standards set out above, Ricky Parnell was not deliberately indifferent. It is unlikely that Ricky Parnell was familiar with Plaintiff's medical history. While the Sixth Circuit has held that certain symptoms are enough to demonstrate to a lay person that medical care is required, there is no factual dispute that Plaintiff received care on multiple occasions. Because Ricky Parnell did not have knowledge of the facts tending to demonstrate that, in this particular instance, those symptoms created a serious medical need not corrected by the medical staff, there was no reason for him to question the medical treatment provided by the medical staff. Accordingly, there is no evidence that Ricky Parnell was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, [or that] he [drew] the inference." Because neither the objective nor subjective requirements are met, there is no showing of deliberate indifference.

Additionally, some circuits have held that non-medical personal are entitled to defer to the judgment of health professionals so long as the official does not ignore specific requests from an inmate. *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010); *Spurill v. Gillis*, 372 F.3d 218 (3d Cir. 2004) Given that Ricky Parnell has contracted with a medical provider and established a specific medical protocol for the Fulton County Detention Center, Ricky Parnell is entitled to rely on the health professionals treating Plaintiff in this case. There is no evidence that Ricky Parnell ignored any request specifically directed at him by Plaintiff. Accordingly, this also demonstrates that there was no deliberate indifference.

Similarly, there is no evidence on which to establish supervisory liability. Ricky Parnell has contracted with an outside entity to provide health care compliant with Kentucky law. Ricky

8

Parnell was entitled to rely on the contractor to provide adequate medical services in this instance, as there was no evidence that they had previously failed to provide adequate service or that, in this instance, they were failing to provide adequate service. Accordingly, Plaintiff has failed to demonstrate that Ricky Parnell was on notice that any of his policies were inadequate or unconstitutional.

**Carrie Powell**

From the testimony, Carrie Powell was more involved in the treatment of Plaintiff than Defendant Parnell, but less involved than Defendant Hoffstutter. There is no evidence that Carrie Powell was taking a direct role in Plaintiff's medical care. While she may have reviewed some of the reports and generally been aware of Plaintiff's condition, she also was aware that Doctor Cox and the nurse were handling the care of Plaintiff. Accordingly, as with Parnell, she showed no deliberate indifference to Plaintiff receiving appropriate medical care.

More disturbing, if true, is the allegation that she interfered with Doctor Cox's diagnosis, decided Plaintiff was malingering, and suspended his prescriptions. However, this threat to discontinue Plaintiff's medication is contradicted by the medical logs and testimony indicating that Plaintiff received his prescriptions in full. Because Carrie Powell did not actually interfere with medical personnel, despite her threat to do so, she was not deliberately indifferent. The only evidence of any missed medication administrations are a result of Plaintiff's refusal to take said medication.

Because Carrie Powell was entitled to rely on the diagnosis and activity of her medical team, she did not have the required subjective component of deliberate indifference. While active interference with the medical team could have established the required subjective

9

indifference, there is no evidence that Carrie Powell followed through with her alleged threat to have Plaintiff's medication stopped. Accordingly, there is no evidence that Carrie Powell was deliberately indifferent.

Because no party was deliberately indifferent, the failure to protect claim must also fail.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. A separate order shall issue.